**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Eric R. McCarroll,

      Plaintiff,

                        Case No. 2:04-cv-00900

      v.                     JUDGE GRAHAM

Helen DeSantis, et. al.,

      Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>

Eric McCarroll ("plaintiff"), brought this employment discrimination suit against The Ohio State University ("OSU"), Helen DiSantis ("DiSantis"), Sara Blouch ("Blouch"), Thomas Baltzell ("Baltzell"), and Ronald Cichalec ("Cichalec") alleging violations of Title VII and 42 U.S.C. §§1981, 1983, 1985, 1986, and 1988.  Plaintiff also asserted a pendant state law claim of intentional infliction of emotional distress.

On August 4, 2005, plaintiff voluntarily dismissed, with prejudice, defendants DiSantis and Cichalec (Document 22).  On October 27, 2005, the remaining defendants, OSU, Blouch, and Baltzell (collectively "defendants"), moved for summary judgment.  Plaintiff failed to respond within the required twenty-one days.  <u>See</u> Local Civil and Criminal Rules 7.2(a)(2), Southern District of Ohio, June 14, 2004.  On December 16, 2005, this court ordered plaintiff to show cause by December 27, 2005, as to why

defendants' motion should not be granted.[1]  Plaintiff did not timely respond to that show cause order.  When plaintiff did respond, he moved for an extension of time to file a substantive response.  Plaintiff requested until January 13, 2006, but as of today, over three months later, plaintiff has yet to file a substantive response.  The court will now consider the merits of defendants' summary judgment motion.

## I.  Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).

The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case.  LaPointe, 8 F.3d at 378.  The moving party may meet its

_____

[1]  A clerical error resulted in the show cause order being docketed a second time four days later, December 20.  Both entries were dated December 16, 2005, and required that plaintiff show cause by December 27.

burden by showing that the nonmoving party lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).  The Court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

3

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## II.  Background

Plaintiff, an African-American, has been employed by different departments at OSU almost continuously since 1980. This lawsuit stems from his employment in the Department of Transportation and Parking Services (the "transportation office").  Plaintiff worked as a courier in the transportation office from June, 1998, until his resignation on November 2, 2001.  During that time, defendant Baltzell was plaintiff's

4

immediate supervisor and defendant Blouch supervised both plaintiff and Baltzell.

Prior to his employment in the transportation office, plaintiff worked in other departments at OSU and was disciplined on many occasions for inappropriate language, insubordination, poor attendance, inadequate performance, and other conduct deficiencies. Plaintiff attributed these early problems to youth and a drug addiction.

While plaintiff was employed with the transportation office, the relevant period of employment for purposes of this lawsuit, his behavior problems continued. For example, in April, 1999, plaintiff grabbed a co-worker, Bryant Freeman, by the collar and shoved him up against a desk and then pushed him into a wall. Plaintiff concedes this action violated OSU's policy against workplace violence and admits he could have been fired over the incident. He said, "There was no excuse for it. I - - I had no right to put my hands on him." See McCarroll Dep. at 238. Plaintiff was given a one-day suspension and encouraged to seek counseling.

In March, 2000, a bag of marijuana was discovered in one of the parking booths. Rather than bring this to the attention of his supervisors and turn the evidence over to the police, plaintiff claims he flushed the marijuana down a toilet. Later, he admitted this was improper and in poor judgment. Id. at 313.

5

Plaintiff also misused university resources after a female student shouted an expletive at him during a traffic incident. Plaintiff, driving a university vehicle, followed the female student off-campus to record her license plate. He then instructed a co-worker to use an OSU computer to look up the student's identifying information. Plaintiff e-mailed the student's supervisor in the Geography Department to complain of the behavior. Plaintiff was reprimanded for his misappropriation of resources and given a one-day suspension.

On numerous other occasions plaintiff was insubordinate toward his supervisors. For example, he told one of his supervisors that if the supervisor would be checking up on him, "then I suggest you start picking up the bags yourself." See McCarroll Dep. Exhibit 16. As a courier, it was plaintiff's job to collect money bags from parking booth attendants. He admits using a sarcastic tone when making the statement. Plaintiff also e-mailed his supervisors, saying their ideas "really stink" and that "instead of doing things in a relatively easy and intelligent way [you are] going to make this thing into a big headache." See McCarroll Dep. Exhibit 15. Plaintiff also e-mailed a supervisor, calling him "cowardly" and an "outsider" who gained his position of authority illegitimately. See McCarroll Dep. Exhibit 27. In that same e-mail, plaintiff addressed the supervisor as "massa steve" and stated "I'z be curful in da

fucha." See id.

Despite these problems, defendants continued to work with plaintiff and his employment status did not suffer.  In April, 2001, defendant Blouch approved plaintiff's attendance at a Big Ten Development Conference and plaintiff consistently received "meets expectations" performance evaluations.  Some evaluations, however, included comments suggesting he needed to work harder to "maintain respectful and cooperative working relationships."  See McCarroll Dep. Exhibit 31.

Despite these cautionary words, plaintiff's behavior did not improve.  He circulated to his co-workers a "Black Pledge of Allegiance" and pledged to be a "soldier for justice" because his people needed "STRONG and INTELLIGENT WARRIORS."  See McCarroll Dep. Exhibit 29.  Plaintiff also became extremely upset when his supervisors held a meeting with minority transportation office staff members without him.  Plaintiff called in sick the day of the meeting.  When plaintiff returned to work he verbally attacked management, making many of his co-workers uncomfortable with his level of aggression.  See Baltzell Affidavit, Exhibit A. Plaintiff also circulated a memorandum to his co-workers lashing out at his supervisors for their behavior.  As a result of this outburst, Baltzell wrote a memorandum to Blouch requesting immediate intervention.  The memorandum noted that "behavioral and verbal confrontations create a fearful and unstable working

7

environment for many who work with him on a regular basis." See
id. In response to this memorandum, Blouch asked the OSU Police
Department ("OSUPD")for guidance in lawfully addressing
plaintiff's actions and maintaining workplace safety. The OSUPD
performed a records check and discovered an outstanding arrest
warrant for plaintiff that was issued by the Franklin County
Court of Common Pleas in 1993. The warrant related to a custody
dispute between plaintiff and his former wife. Blouch and
Baltzell discouraged the OSUPD from executing the warrant.
Blouch Affidavit ¶4; Baltzell Affidavit ¶4. However, upon
discovering the outstanding warrant the police concluded that
they were bound to execute it. Plaintiff was arrested and
released by a Franklin County judge the following day.

On August 6, 2001, plaintiff filed a complaint with OSU's
Human Resources Department ("HR department") that contained
numerous racial discrimination claims. OSU initially assigned
Greg Newman to investigate, but plaintiff objected because he is
white. Carman Yarbrough, an African- American, joined the
investigation. Both investigators researched the claims, and on
October 17, 2001, they published their findings, concluding that
the allegations lacked merit. See McCarrol Dep. Exhibit 2.

On September 27, 2001, plaintiff, a recent graduate from OSU
with a degree in social work, applied for a social work position
at OSU's Medical Center. Plaintiff was offered the job at a

8

higher salary than his current position.  He accepted and completed a "voluntary resignation" form saying he was leaving because he was "overqualified." <u>See</u> McCarrol Dep. Exhibit 43. Plaintiff's last official day with the transportation office was November 2, 2001.

### III.  Discussion

Plaintiff alleges violations of Title VII and 42 U.S.C. §§1981, 1983, 1985, 1986, and 1988 of the United States Code. The complaint also contains a pendant state law claim for intentional infliction of emotional distress.  Defendants moved for summary judgment on all claims and plaintiff failed to respond.  For the reasons discussed below, defendants' motion for summary judgment shall be granted.

### A.  Plaintiff is Not the Proper Party.

On March 11, 2003, plaintiff filed for personal bankruptcy. His estate assets included these claims.  The bankruptcy court appointed plaintiff's attorney in this action, Beverly Corner, as special counsel to plaintiff's bankruptcy trustee for purposes of prosecuting these claims.  On September 20, 2004, Corner filed suit in this matter in plaintiff's name, not on behalf of the trustee.

Under 11 U.S.C. §541(a) plaintiff's claims are properly a

part of his bankruptcy estate and the trustee is the real party in interest. The bankruptcy trustee has exclusive standing to assert the discrimination claim. <u>Wieburg v. GTE Southwest, Inc</u>., 272 F.3d 302, 306 (5th Cir. 2001). Federal Rule of Civil Procedure 17(a) authorizes dismissal of an action for failure to name the proper party, but only after the plaintiff has been notified of the mistake and given a reasonable time to correct it. Leave to substitute shall be freely granted when plaintiff demonstrates an honest mistake, meaning that the determination of the proper party was difficult or the mistake is otherwise understandable. <u>Lans v. Gateway 2000 Inc.</u>, 84 F.Supp.2d 112, 120 (D.D.C.1999).

Defendants claim plaintiff was notified of this error at, or shortly after, his deposition on June 24, 2005. However, no evidence of notice has been provided. Therefore, the first documented notice to plaintiff is defendants' summary judgment motion which was filed on October 27, 2005. Plaintiff has had over four months to respond to defendants' summary judgment motion and/or to substitute the real party in interest. Plaintiff has made no showing that filing the action in his name was a genuine or honest mistake, and even if he could, he has had more than a reasonable opportunity to substitute the proper party. Plaintiff's continued failure demonstrates an abandonment of his claims justifying a grant of summary judgment under Rule

10

17(a).

**B. Plaintiff's Title VII Claims.**

Plaintiff's claims under Title VII of the Civil Rights Act also fail for procedural reasons and on the merits.

**1. Plaintiff Failed to Exhaust Administrative Remedies.**

Under Title VII, an employee must first file a charge with the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter before seeking relief in court. See 42 U.S.C. §2000(b)(e)(f). Summary judgment is appropriate when a plaintiff fails to meet these requirements. Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1486-87 (6th Cir. 1989); Parsons v. Yellow Freight Sys., 741 F.2d 871, 874 (6th Cir. 1984).

Plaintiff admits he never filed a charge of discrimination with the EEOC or the Ohio Civil Rights Commission and never obtained a right-to-sue letter. See McCarroll Dep. at 25-26. Therefore, plaintiff's Title VII claims must be dismissed for failure to exhaust administrative remedies.

**2. Title VII Does Not Impose Individual Liability.**

The Sixth Circuit has held that "employers," but not supervisors, may be found individually liable under Title VII. Wathen v. General Electric. Co., 115 F.3d 400, 406 (6th Cir. 1997). Because defendants Blouch and Baltzell were supervisors

11

of plaintiff, but not his employer, they cannot be held individually liable and summary judgment is appropriate with respect to plaintiff's Title VII claims against them as individuals.

### 3.    Plaintiff's Title VII Claims Lacks Merit.

A review of the record demonstrates that no genuine issues of fact exists with respect to plaintiff's Title VII claims of disparate treatment, hostile work environment, and retaliation.

### a).  Disparate Treatment

Plaintiff's disparate treatment claim stems from his arrest, the award of preferential job duties to white coworkers for football games, and events leading to plaintiff's resignation. To prevail on a disparate treatment claim, plaintiff must establish a prima facie case by showing: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) that a comparable individual outside his protected class received more favorable treatment.  Birch v. Cuyohoga County Probate Court, 392 F.3d 151, 166, n. 12 (6th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S.792, 802 (1973)).  If plaintiff proves these elements, defendants may rebut plaintiff's claim by articulating a legitimate, non-discriminatory business reason for their actions.  Texas Dep't. of Comty. Affairs v. Burdine, 450

U.S. 248, 255 (1981).  Plaintiff then bears the burden of proving by a preponderance of the evidence that defendants' reason was not the true reason, but instead a pretext for intentional discrimination.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994).

Plaintiff's claims fail as he is not able to meet the prima facia elements described above.  For example, plaintiff's arrest does not qualify as an adverse employment action because it was made by the OSUPD pursuant to a valid outstanding warrant issued by the Franklin County Court of Common Pleas.  Defendants presented undisputed evidence that they asked the police not to arrest plaintiff, yet the arrest was made anyway.  Moreover, there is no evidence that the arrest affected his employment in the transportation office or that the transportation office took any action as a result.  Because plaintiff has failed to present evidence of an adverse employment action, his claim of disparate treatment fails.

Plaintiff also cannot show that a comparable individual outside of his protected class received more favorable treatment. To succeed on this claim plaintiff must show that "all of the relevant aspects of [plaintiff's] employment situation were 'nearly identical' to those of [the non-minority's] employment situation," yet the non-minority received more favorable treatment.  See Ercegovich v. Goodyear Tire & Rubber Co., 154

13

F.3d 344, 352 (6th Cir. 1998) (quoting <u>Pierce v. Commonwealth</u> <u>Life Insurance Co.</u>, 40 F.3d 796, 802 (6th Cir.1994)).  <u>See also</u> <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir.1992).

With respect to plaintiff's arrest, he claims that a white coworker, Jack Carey, receive more favorable disciplinary treatment, because when Carey was accused of inappropriately intimidating his co-workers, Blouch reassigned him and required that he attend sensitivity training.  Plaintiff's situation is not nearly identical.  Plaintiff's first offense while employed in the transportation office was his physical altercation with Bryant Freeman, which plaintiff admits violated office policy and could have resulted in his termination.  Plaintiff received a one-day suspension and was encouraged to attend sensitivity training.  After that initial incident, plaintiff's problems continued with the misappropriation of resources and numerous acts of insubordination.  Most importantly, however, plaintiff was not arrested until the OSUPD discovered the warrant for his arrest.  As discussed above, there is no evidence to support plaintiff's claim that his arrest was an adverse employment action.  Hence, a prima facia case cannot be established.

Plaintiff also claims disparate treatment because a white co-worker, Jeremy Robertson, received more favorable football assignments.  Robertson was allowed to sit in a car, whereas plaintiff was assigned duties that involved a lot of standing.

14

This allegation fails because Robertson and plaintiff were not similarly situated, in that Robertson was assigned to an open air parking lot and occasionally his duties required travel between different lots. Plaintiff, when working football overtime, was typically assigned to parking garages which provided him shelter from the elements. Plaintiff does not dispute that a vehicle was provided to him when transportation to other parts of campus was required or when he did not have shelter.

Plaintiff's final disparate treatment claim centers on his allegation of constructive discharge. A constructive discharge occurs if working conditions are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. Yates v. Avco Corp., 819 F.2d 630, 636-637 (6th Cir.1987). Proof of discrimination alone is not enough. Plaintiff must show other aggravating factors and that conditions were intolerable. Id. In determining whether a constructive discharge has occurred, the court must examine both the employer's intent and the employee's feelings from an objective standard of reasonableness. Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982).

Defendant admits that he resigned because he was "overqualified." Plaintiff had recently graduated with a degree in social work and gained employment as a social worker. The new position paid a higher salary. Plaintiff has presented no

15

evidence showing that working conditions were so intolerable that he was forced to resign.

### b).  Hostile Work Environment Claim

Plaintiff also claims he suffered from a hostile work environment.  For plaintiff to prevail, he must show the workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)(internal quotes and citations omitted).  A "mere utterance" is beyond Title VII's reach.  Id.  Plaintiff must show "repeated slurs" that created an unreasonably abusive or offensive work-related environment or that the "repeated slurs" would adversely affect a reasonable employee's ability to perform the tasks required by the employer.  Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988).

To support his claim, plaintiff describes a conversation he had with Blouch after plaintiff sent an e-mail criticizing his supervisors.  Plaintiff recalls that Blouch said something to the effect that he needed to learn to accept things the way they were or he would not make it in the department.  See McCarroll Dep. at 97.  Plaintiff asked if that meant he needed to assimilate, and Blouch responded, "Well, this is America, and that's the way it is." See id. at 98.  Plaintiff admits this comment was not a

16

racial slur, but he subjectively perceived the comment to be racially motivated.  Id. at 91.  That is the only "even remotely racist" comment plaintiff ever heard from Blouch.  See id. at 99.

With respect to defendant Baltzell, plaintiff claims he said things like, "well, them black girls got some big behinds" and he referred to blacks as "you people."  See id. at 92, 93, 95. Plaintiff states that Baltzell made these comments because he was trying to be "buddy-buddy."  Id. at 92.  Plaintiff also admits that Baltzell would apologize because he wanted to make sure he wasn't saying anything that offended plaintiff.  Id. at 91.  When plaintiff told Baltzell that the comments were upsetting and offensive, Baltzell "toned it down."  See id. at 96.  Plaintiff admits "[Baltzell] seemed to really like me.  We got along great." See id. at 95-96.

Blouch's comment did not create a hostile work environment as it was a single incident that involved neither an insult nor a slur.  The "assimilation" comment was simply too vague and ambiguous to support a finding of discrimination.  Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025-26 (6th Cir. 1993).  Likewise, Baltzell's comments did not permeate the workplace with discriminatory intimidation, ridicule, and insult.  Plaintiff admits that the comments were made in an attempt to be "buddy-buddy," and when he informed Baltzell that the comments were offensive he "toned it down."  Further, plaintiff admits that

17

"[Baltzell] seemed to really like me.  We got along great." <u>See</u> <u>id</u>. at 95-96.  Based on these admissions, the alleged comments, while certainly not appropriate, do not rise to the level of "repeated slurs" that create an unreasonably abusive or offensive work-related environment.

### c).  Retaliation Claim

Plaintiff's last Title VII claim alleges that after he filed his discrimination complaint with the HR department, defendants retaliated by having him arrested and then constructively discharged.  To prevail on a retaliation claim, plaintiff must show that he (1) engaged in protected activity, (2) suffered an adverse employment action subsequent to or contemporaneous with the protected activity, and (3) the two are causally connected. <u>Jackson v. Pepsi Cola, Dr. Pepper Bottling Co.</u>, 783 F. 2d 50, 54 (6th Cir.1986).

Plaintiff's retaliation claim fails as he cannot show that he was ever subjected to any adverse employment action. Plaintiff was arrested by the OSUPD on an outstanding warrant and subsequently suffered no employment-related consequences as a result.  Similarly, plaintiff was not constructively discharged. It is undisputed that he voluntarily resigned his position because he was overqualified and had secured a higher paying position in his chosen profession.  Because plaintiff has failed to present any evidence of an adverse employment action, his

18

retaliation claim must be dismissed.

### C.    Plaintiff's §1981 Claims.

Plaintiff's 42 U.S.C §1981 claims fail for several reasons.
First, §1983 provides the exclusive remedy for violations of
§1981 by state government actors.  Jett v. Dallas Indep. Sch.
Dist., 491 U.S. 701, 733 (1989).  The defendants are state
actors.  Therefore, §1983 constitutes the exclusive federal
remedy and plaintiff's §1981 claims must be dismissed.

The state defendants are also immune from §1981 claims under
the Eleventh Amendment.  Hall v. Med. Coll. of Ohio at Toledo,
742 F.2d 299, 301 (6th Cir. 1984).

Lastly, plaintiff's §1981 claims fail on the merits.  The
requirements for §1981 claims of discrimination and retaliation
are the same as those under Title VII.  Christian v. Wal-Mart
Stores, Inc., 252 F.3d 862, 868 (6th Cir.2001).  As previously
discussed, plaintiff's Title VII claims failed for lack of
evidence.  For that same reasons, plaintiff's §1981 claims fail.

### D.    Plaintiff's §1983 Claims.

Plaintiff's 42 U.S.C. §1983 claims re-assert his Title VII
employment discrimination claims.  Plaintiff also alleges that
the OSUPD failed to read him his Miranda warning while
questioning him after his arrest.  Plaintiff's §1983 claims fail
because they are untimely.  The statute of limitations governing

a §1983 claim is two years. <u>Ashiegbu v. Purviance</u>, 74 F. Supp. 2d 740, 747 (S.D. Ohio. 1998), aff'd 194 F.3d 1311 (6th Cir.1990). Plaintiff's last day of employment with the transportation office was November 2, 2001. Plaintiff's complaint in this action was not filed until September 20, 2004, almost three years later.

**E.  Plaintiff's §1985 Claim.**

Plaintiff alleges that defendants conspired to interfere with and violate his civil rights in violation of 42 U.S.C. §1985. This claim also fails because it was brought outside of the applicable statute of limitations. The statute of limitations for a §1985 claim is two years. <u>Ashiegbu</u>, 74 F. Supp. 2d at 747. Plaintiff was arrested and resigned his position well over two years before the complaint was filed in this matter. Hence, plaintiff's §1985 claim is time-barred.

**F.  Plaintiff's §1986 Claim.**

Plaintiff also bring a 42 U.S.C. §1986 claim for neglect in preventing the claimed discrimination. This claim also fails because it is untimely. Section 1986 expressly provides a one-year statute of limitations. <u>See</u> 42 U.S.C. §1986. This claim was brought well outside that period. Therefore, summary judgment shall be granted.

**G.  Plaintiff's §1988 Claim.**

Plaintiff's claim under 42 U.S.C. §1988 should also be

dismissed as that section does not provide for any independent cause of action. Section 1988 sets procedure and provides remedies, but does not authorize any independent claim. See 42 U.S.C. §1988; Spurlock V. Whitley, No. 02-5114 (unpublished), 79 Fed. Appx. 837, 838, n. 1 (6th Cir.2003).

### H. Plaintiff's Intentional Infliction of Emotional Distress Claim.

Lastly, plaintiff's complaint arguably asserts a state law claim for intentional infliction of emotional distress. The tort of intentional infliction of emotional distress occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." See Yeager v. Local Union 20, 6 Ohio St. 3d 369, 374 (1983).

To survive summary judgment, plaintiff must present evidence that: (1) defendants intended to cause the plaintiff serious emotional distress; (2) defendants' conduct was extreme and outrageous; (3) defendants' conduct was the proximate cause of plaintiff's serious emotional distress; and (4) plaintiff's mental anguish is serious and of a nature that no reasonable person could be expected to endure it. Phung v. Wast Mgt., Ionc., 71 Ohio St. 3d 408, 410 (1994); Tschantz v. Ferguson, 97 Ohio App. 3d 693, 702 (1994).

Plaintiff's intentional infliction of emotional distress claim fails because plaintiff failed to present evidence satisfying these essential elements. In Yeager, the Ohio Supreme

21

court defined "extreme and outrageous" saying:

> It [is] not enough that the defendant has acted
> with an intent which is tortuous or even criminal
> ... or a degree of aggravation which would entitle
> the plaintiff to punitive damages for another
> tort.  Liability has been found only where the
> conduct has been so outrageous in character, and
> so extreme in degree, as to go beyond all possible
> bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community.

See Yeager, 6 Ohio St. 3d at 374-375.  Plaintiff has not
presented evidence of any "extreme or outrageous" conduct
as that term is defined by the Ohio Supreme Court.

Moreover, Ohio courts have held that an action for
intentional infliction of emotional distress "must be predicated
upon a psychic injury that is both severe and debilitating."
Uebelacker v. Cincom Systems, Inc., 48 Ohio App.3d 268, 276
(1988)(citations omitted).  To prove such an injury the plaintiff
must offer expert medical testimony or the testimony of lay
witnesses acquainted with the plaintiff describing significant
changes they have observed in the emotional or habitual makeup of
the plaintiff.  Id.  No evidence of this kind has been presented.
Therefore, no genuine issue of material fact exists and
plaintiff's intentional infliction of emotional distress claim
must be dismissed.

22

### IV.  Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted.  The clerk shall enter final judgment in favor of defendants on all plaintiff's claims, dismissing plaintiff's complaint with prejudice.  Costs shall be taxed against plaintiff.

It is so ORDERED.

s/James L. Graham
JAMES L. GRAHAM
United States District Judge


DATE: March 17, 2006